**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**AIKEN DIVISION**

| | |
|---|---|
| SubAir Systems, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:06-cv-02620-RBH |
| ) | |
| PrecisionAire Systems, Inc., ) | |
| Precision Small Engine Company, ) | |
| and Andrew M. Masciarella, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF RULE 11 MOTION**

**Table of Contents**

I.   STATEMENT OF FACTS ................................................................................................. 1

II.  ANALYSIS ........................................................................................................................ 7

    A.   The Federal Circuit Strictly Enforces the Pre-Filing Investigation
        Requirements of Rule 11 ........................................................................................ 7

    B.   SubAir Failed to Perform Any Pre-Filing Inquiry Before Filing the
        Complaint ............................................................................................................. 12

III. CONCLUSION ............................................................................................................... 13

**DEFENDANTS' MEMORANDUM IN SUPPORT OF RULE 11 MOTION**

The present case involves completely baseless claims of patent infringement against each of the Defendants. Pursuant to well-established and often repeated precedent, the Federal Circuit consistently holds that the pre-filing inquiry required by Rule 11 requires a patentee to 1) construe the asserted claims and 2) determine whether the accused products include each limitation of the claims. Defendants respectfully assert that, despite repeated warnings to refrain from commencing a frivolous patent lawsuit, Plaintiff nonetheless commenced the present litigation without any reasonable basis to allege patent infringement against Defendants. Simply stated, SubAir commenced the present litigation without any understanding of the structure or operation of the products accused of infringement. Therefore, pursuant to Rule 11, Defendants respectfully request an Order dismissing the present suit with prejudice, awarding Defendants reasonable attorneys' fees and costs incurred in defending against the Complaint, and such further sanctions as the Court deems necessary.

**I.    STATEMENT OF FACTS**

On September 6, 2006, Plaintiff SubAir Systems, LLC sent a letter to Defendant Andrew Masciarella accusing the PrecisionAire SubSurface Heating & Cooling System of patent infringement.[1] On September 17, 2006, counsel for Mr. Masciarella responded with a detailed explanation of why the accused system could not possibly infringe any of SubAir's asserted patents.[2] In addition, Mr. Masciarella's counsel specifically cautioned SubAir about asserting frivolous and unfounded claims of patent infringement.

On October 16, 2006, SubAir responded to Mr. Masciarella's letter by stating,

---

[1] Exhibit 1, September 6, 2006 letter from Cort Flint to Andrew Masciarella.
[2] Exhibit 2, September 17, 2006 letter from Howard Greenwald to Cort Flint.

1

**Generally, a patent owner can sue whom they wish when they wish**. While a patent infringement suit is not justified in one situation, the development of a later situation where a suit is justified does not prevent the lawsuit, or the remedies under the patent laws from being applied.[3]

On September 21, 2006, SubAir filed a Complaint alleging that the accused system infringes six patents.[4] On January 4, 2007, SubAir filed an Amended Complaint to change the named Defendants.[5] The Amended Complaint alleges infringement of U.S. Patents 5,433,759; 5,507,595; 5,542,208; 5,617,670; 5,636,473; and 7,033,108. The only product accused of infringement in the Amended Complaint is the PrecisionAire SubSurface Heating & Cooling System (with and without trailer).[6]



**PrecisionAire SubSurface Heating & Cooling System (with and without trailer)**

In response to Defendants' Motion to Dismiss, SubAir also identified the PrecisionAire Portable Subsurface Aeration System as an accused product.[7]

---

[3] Exhibit 3, October 19, 2006 letter from Cort Flint to Howard Greenwald.
[4] Docket Entry 1, Complaint.
[5] Docket Entry 6, Amended Complaint.
[6] *Id.* at ¶¶ 11, 16, 21, 26, 31, 36.
[7] Docket Entry 15, Plaintiff's Opposition to Defendants' Motion to Dismiss, p. 8.

2


**PrecisionAire Portable Subsurface Aeration System**

Defendants' initial discovery requests sought to identify the specific claims alleged to be infringed and the extent of SubAir's pre-filing investigation.[8] Specifically, Defendants' Interrogatory No. 5 requested the following information:

> **Defendants' Interrogatory No. 5**
> Identify and describe each instance in which Plaintiff, someone acting on behalf of Plaintiff, or someone acting in concert with Plaintiff investigated, examined, studied, or otherwise observed each product or method identified in response to Defendants' Interrogatory No. 1, including in the answer the identification of all persons involved, the location where such acts took place, and the date of such activities.

SubAir's discovery responses assert infringement of each independent claim of each asserted patent.[9] In addition, SubAir identified Kevin Crowe, an employee of SubAir, who purportedly conducted the pre-suit investigation on four separate occasions, as follows:

> **SubAir's Answer to Interrogatory No. 5**
> As presently advised, defendants' products and methods have been inspected at the Reynolds Plantation golf course in Georgia in January of 2007, and defendants' products and methods have been inspected at the 2006 Golf Industry

---

[8] Exhibit 4, Defendants' Interrogatory Nos. 2 and 5.
[9] Exhibit 5, SubAir's Answer to Interrogatory No. 2.

>Show in Atlanta, the 2007 Golf Industry Show in Anaheim, and the 2007 Golf Superintendent Show in Ontario by Kevin Crowe of SubAir.[10]

Upon receipt of these discovery responses, Defendants served SubAir with the present Rule 11 Motion[11] and requested a convenient time to depose Kevin Crowe.

On July 24, 2007, Defendants deposed Kevin Crowe. Mr. Crowe confirmed that the four "inspections" identified in SubAir's interrogatory answer were the only times that anyone at SubAir viewed Defendants' products accused of infringement.

>Q. There is four inspections listed there, right?
>A. Yes.
>Q. Did you perform each one of those?
>A. Yes.
>Q. Other than these four inspections, have you ever had any other opportunity to investigate or observe Precision's products?
>A. I have not.[12]
>
>Q. Are you aware of anyone else at SubAir who has conducted an investigation or observation of any other products accused by SubAir of infringement in this litigation?
>A. I am not.[13]

Mr. Crowe also testified at least <u>seven</u> different times that he has never even seen the structure housed inside the vault or "big green box" of the PrecisionAire SubSurface Heating & Cooling System:

>Q. But did you learn anything at previous trade shows about the structure and operation of what was on the inside?
>A. No, no; never opened it and looked.[14]
>
>Q. So you didn't have an opportunity during the 2006 Golf Industry Show in Atlanta to actually see what was inside the box?
>A. No, I did not.
>Q. So as you sit here today, you don't know what was inside that box?

---

[10] Exhibit 5, SubAir's Answer to Interrogatory No. 5.
[11] Exhibit 6, May 22, 2007 letter from Steven LeBlanc to Cort Flint.
[12] Exhibit 7, July 24, 2007 deposition of Kevin Crowe at p. 41.
[13] *Id.* at p. 42.
[14] *Id.* at p. 43.

4

A. I do not.[15]

Q. So you never got to see inside at that time?
A. I did not see inside at that time, no.[16]
Q. I just want to make sure I have an understanding. We referred a couple of times to the big green box.
A. Correct.
Q. And as you sit here today, you have never had an opportunity to look inside the box of Precision's -- any of Precision's systems that are accused of infringement in this case?
A. That's correct.
Q. So as you sit here today, you don't know what is contained inside any of the enclosures for any of the Precision systems accused of infringement here today?
A. That's correct.[17]

Q. And again, as you sit here today, you don't know what is inside the vault, in other words, the big green box?
A. I do not.[18]

Q. Okay. And this would be another big green box that you don't know what is going on inside it?
A. That would be correct.[19]

Q. And did you have an opportunity at the San Diego trade show to look inside the green box?
A. No. That was actually the first time I had ever been even close to it, and I had just come to work for SubAir so wasn't really sure what I was looking at, just, you know, kind of on the way by.
Q. So you saw it as you were walking by it?
A. Yes.
Q. So how long do you think you had the chance to see it at that trade show?
A. Fleeting glance.
Q. You didn't have an opportunity to learn anything about the structure and operation at that trade show?
A. No.
MR. FLINT: Objection. That question has been asked and answered.[20]

---

[15] *Id.* at p. 44.
[16] *Id.* at p. 53.
[17] *Id.* at p. 97.
[18] *Id.* at p. 104.
[19] *Id.* at p. 107.
[20] *Id.* at p. 168.

5

Furthermore, although Mr. Crowe testified that he has seen Defendants' products in maintenance sheds, he admitted he has never seen or inspected a PrecisionAire Portable Subsurface Aeration System unit in operation:

> Q. You didn't mention in any of your -- any of these inspections we talked about previously seeing a portable or mobile unit, so I take it you have not had an opportunity to inspect or observe a Precision portable or mobile unit that is accused of infringement in this case?
> A. I have seen the mobile units in operation at different places.
> Q. Okay. Where at?
> A. I saw one -- I know I saw one at Woodside Plantation.
> Q. Do you recall when you saw that?
> A. No.
> Q. Sometime this year?
> A. No. It would have been a while ago.
> Q. Okay. And exactly what did you see?
> A. Just a small black machine, you know, with a gas driven motor and a blower.
> Q. Was it connected to a green at the time you saw it?
> A. It was not.
> Q. You didn't actually see it operating?
> A. I did not.[21]

Although the accused products have been publicly available for inspection at trade shows and golf courses throughout the United States for years, no one at SubAir bothered to either inspect these products or to ask Defendants for an opportunity to look inside the vault.

> Q. Prior to -- are you aware of anytime anybody at SubAir asking Precision to allow SubAir to look inside this vaulted unit, the big green box as we have talked about today?
> A. I am not aware of anyone doing so, no.
> Q. And other than Reynolds Plantation Golf Course, are you aware of anybody at SubAir ever attempting to go to a golf course and ask for permission to look inside one of the big green boxes?
> A. I am not aware of anyone doing so, no.[22]

Most tellingly, Crowe emphatically admitted that he was never directed by anyone at SubAir to even conduct a pre-suit investigation.

---

[21] *Id.* at pp. 97-98 (emphasis added).
[22] *Id.* at p. 172.

6

> Q. Let me show you what's been marked -- and let me back up. Strike that and let me back up. And you weren't asked to conduct any of these, quote, unquote, inspections; these are just things that happened while you were either at trade shows or happened to be at Reynolds Plantation Golf Course?
> A. Correct.
> Q. **You weren't specifically asked or directed by anyone to go out and perform an inspection of a Precision product**?
> A. **No. None of these trips were specific for that, no**.
> Q. Okay. And have you ever been asked specifically to go out and investigate a Precision product?
> A. We have had discussions, if I see one, to take a look.
> Q. But --
> A. **But I have never gone out on, you know, a specific task to go locate one and visually inspect it**.
> Q. **Nobody has asked you to do that**?
> A. **No**.[23]

Despite being cautioned about filing frivolous claims before filing this suit, despite being provided over three months to withdraw the unfounded allegations, and despite Mr. Crowe's testimony that SubAir failed to conduct any pre-filing inquiry, SubAir has refused to withdraw any allegations included in the Amended Complaint.

## II. ANALYSIS

### A. The Federal Circuit Strictly Enforces the Pre-Filing Investigation Requirements of Rule 11

Rule 11 is aimed at curbing baseless filings which abuse the judicial system and burden the courts and parties with expense and delay.[24] By presenting a signed paper to the court, an attorney certifies that the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.[25] However, allowing factual contentions to be made "on

---

[23] *Id.* at pp. 86-87 (emphasis added).
[24] *Cooter & Gell v. Hartmax Corp.*, 496 U.S. 384, 397-98 (1990).
[25] FED. R. CIV. P. 11(b).

7

information and belief does not relieve litigants from the obligation to conduct an appropriate investigation into the facts that is reasonable under the circumstances."[26] To "reduce the reluctance of courts to impose sanctions," Rule 11 was amended in 1983 to provide that courts "<u>shall impose</u>" sanctions if the rule is violated.[27]

The United States Court of Appeals for the Federal Circuit has specifically considered the requirements that Rule 11 places upon a patentee such as SubAir when filing a complaint for patent infringement. For example, in *Judin v. United States*,[28] the patentee filed suit alleging that the federal government infringed three patents relating to bar code scanners. Prior to filing the complaint, the patentee observed bar code scanners being used at the post office and reviewed technical specifications and commercial literature related to these scanners.[29] From these observations, the patentee was able to determine that at least some of the elements of the claims were present in the accused devices.[30] However, prior to filing suit, the patentee neither obtained an actual accused product nor performed any reverse engineering, and the patentee also failed to determine whether two key elements of the claims were present in the accused devices.[31] The patentee also did not attempt to obtain the product or a technical description of it from the defendant prior to filing suit.[32]

On appeal from the district court's denial of sanctions, the Federal Circuit held that Rule 11 requires more than observing the operation of the accused products and determining that <u>some</u>

---

[26] *Id.* Advisory Committee Notes, 1993 Amendments.
[27] *Refac Int'l, Ltd. v. Hitachi, Ltd.*, 921 F.2d 1247, 1257 (Fed. Cir. 1990).
[28] *Judin v. United States*, 110 F.3d 780 (Fed. Cir. 1997)
[29] *Id.* at 781.
[30] *Id.* at 782.
[31] *Id.* at 782-83.
[32] *Id.* at 783.

8

of the limitations of the patent claims were met.[33] The court held that determining infringement is a two-step process requiring that the claims be construed and then compared to the accused device to determine whether all of the claim elements are present in the accused device.[34] The court then noted that

> prior to the filing of the suit, neither [the patentee] or his counsel had made any reasonable effort to ascertain whether the accused devices satisfied the two key claim limitations, either literally or under the doctrine of equivalents. No adequate explanation was offered for why they failed to obtain, or attempted to obtain, a sample of the accused device from the Postal Service or a vendor so that its actual design and functioning could be compared with the claims of the patent. **Under these circumstances, there is no doubt that [the patentee] failed to meet the minimum standards imposed by Rule 11, . . . The trial court's determination to the contrary is an abuse of its discretion**.[35]

The Federal Circuit also rejected the assertion that the lack of an adequate pre-filing inquiry was cured because the patentee consulted an expert <u>after</u> filing and was able to make arguments of infringement.[36] The court noted that "Rule 11 is not about after-the-fact investigation" and instead requires that the inquiry be undertaken "before the suit is filed, not after."[37] Noting that it had no hesitancy in imposing sanctions based on the record before it for all reasonable expenses and fees incurred due to the filing of the complaint, the Federal Circuit remanded to the district court for a determination of sanctions.[38]

The Federal Circuit again revisited the requirements of Rule 11 in *View Engineering, Inc. v. Robotic Vision Systems, Inc.*[39] After being sued for declaratory judgment, the patentee counterclaimed for infringement of eight patents. The patentee asserted that its counterclaims

---

[33] *Id.* at 784.
[34] *Id.*
[35] *Id.* (emphasis added).
[36] *Id.* at 785.
[37] *Id.* at 784, 785.
[38] *Id.* at 785.
[39] *View Engineering, Inc. v. Robotic Vision Systems, Inc.*, 208 F.3d 981 (Fed. Cir. 2000).

9

were based on knowledge of its patents, its understanding of the technology required in the field, and statements and advertising made by the accused infringer.[40] However, at the time of filing the counterclaim, the patentee had not construed the claims of its patents, had not obtained any of the accused products, and had not conducted an element by element infringement analysis.[41] When asked why the infringement analysis had not been conducted, the patentee's attorney responded that it could not perform the analysis until it "learned what View (the accused infringer) actually did."[42]

The Federal Circuit affirmed the district court's finding that the patentee violated Rule 11 by failing to undertake an appropriate pre-filing inquiry.[43] Affirming sanctions of $130,433.97, the court stated,

> A patent suit can be an expensive proposition. Defending against baseless claims of infringement subjects the alleged infringer to undue costs – precisely the scenario Rule 11 contemplates. Performing a pre-filing assessment of the basis of each infringement claim is, therefore, extremely important. **In bringing a claim of infringement, the patent holder, if challenged, must be prepared to demonstrate both to the court and the alleged infringer exactly why it believed before filing the claim that it had a reasonable chance of proving infringement.** Failure to do so should ordinarily result in the district court expressing its broad discretion in favor of Rule 11 sanctions, at least in the absence of a sound excuse or considerable mitigating circumstances.[44]

Rule 11 in a patent infringement case was again recently addressed by the Federal Circuit in *Antonious v. Spalding & Evenflo Co.*[45] In *Antonius*, the asserted patent covered a specific structure for connecting a golf club head to the hosel. The patentee asserted patent infringement claims against 21 different golf club models manufactured by the defendant. Prior to filing suit,

---

[40] *Id.* at 983.
[41] *Id.* at 985.
[42] *Id.*
[43] *Id.* at 986.
[44] *Id.* (emphasis added).
[45] *Antonious v. Spalding & Evenflo Co.*, 275 F.3d 1066 (Fed. Cir. 2002).

10

the patentee had obtained a <u>single</u> golf club model and cut open the club head to determine whether the golf club included the structure recited by the patent. However, neither the patentee nor his attorneys determined whether the other twenty golf club models also included the structure recited by the patent and instead inferred that every golf club model included the same structure.[46]

> Construing Rule 11, the Federal Circuit stated,
>
> As applied by this court, **Rule 11 requires an attorney who files a patent infringement action to compare the accused device with the construed patent claims**. The attorney may consult with his client but may not rely solely on the client's lay opinion that the accused device infringes the patent. Instead, counsel must make a reasonable effort to determine whether the accused device satisfies each of the claim limitations.[47]

The court noted that advancing <u>even a single claim</u> without a proper pre-filing inquiry is improper and sanctionable under Rule 11.[48] The Fourth Circuit has reached similar results in the application of Rule 11.[49]

Accordingly, the Federal Circuit has made clear that prior to filing a complaint for patent infringement, Rule 11 requires that the patentee must 1) construe the claims and then 2) determine whether the accused product includes each limitation or element of the asserted claims. As will now be discussed, SubAir failed to undertake the latter step prior to filing the Complaint.

---

[46] *Id.* at 1070.
[47] *Id.* at 1073-74 (emphasis added)(internal citations omitted).
[48] *Id.* at 1075.
[49] *See, e.g.*, *Brubaker v. City of Richmond*, 943 F.2d 1363, 1373 (4th Cir. 1991) (stating, "a complaint containing allegations unsupported by any information obtained prior to filing violates the required pre-filing investigation.").

11

**B.    SubAir Failed to Perform Any Pre-Filing Inquiry Before Filing the Complaint**

In the present case, SubAir asserts that the accused products infringe each independent claim of each asserted patent.[50] As discussed above, however, SubAir failed to conduct any inquiry to determine whether or not the accused products include each limitation recited in the asserted claims. SubAir's Kevin Crowe – the sole individual identified by SubAir as having performed a pre-filing investigation - emphatically testified at least <u>seven</u> different times that he has never even seen the structure housed inside the vault or "big green box" of the PrecisionAire SubSurface Heating & Cooling System.[51] Although the accused products have been publicly available for inspection at trade shows and golf courses throughout the United States for years, no one at SubAir bothered inspect these products or to even ask Defendants for an opportunity to look inside the vault.[52] Most tellingly, SubAir's supposed pre-filing investigator readily admitted that no one at SubAir ever directed him to even conduct a pre-suit investigation.[53]

The Federal Circuit has held that the unexplained failure to compare the accused product to the asserted claims prior to filing a complaint for infringement is <u>conclusive</u> evidence of a Rule 11 violation.[54] SubAir offers no reason why it did not or could not conduct an adequate pre-filing inquiry. Indeed, when cautioned about asserting frivolous claims of patent infringement, SubAir's counsel defiantly declared that "a patent owner can sue whom they wish

---

[50] Exhibit 5, SubAir's Answer to Interrogatory No. 2.
[51] Exhibit 7, July 24, 2007 deposition of Kevin Crowe, pp. 43, 44, 53, 97, 104, 107, and 168.
[52] *Id.* at p. 172.
[53] *Id.* at pp. 86-87.
[54] *See, e.g.*, *Judin v. United States*, 110 F.3d at 784 ("No adequate explanation was offered for why they failed to obtain, or attempted to obtain, a sample of the accused device from the Postal Service or a vendor so that its actual design and functioning could be compared with the claims of the patent. Under these circumstances, there is no doubt that Judin failed to meet the minimum standards imposed by Rule 11.").

when they wish" and then use discovery to determine whether any infringement actually exists.[55] SubAir's failure to conduct a pre-filing inquiry to determine whether the accused products include the limitations recited in the asserted patents is the exact conduct that the Federal Circuit sanctioned in *Judin v. United States* and *Antonious v. Spalding & Evenflo Co.* discussed above. In addition, SubAir's brazen declaration that it could sue first and investigate later is the exact conduct that the Federal Circuit found sanctionable under Rule 11 in *Judin v. United States* and *View Engineering, Inc. v. Robotic Vision Systems, Inc.*[56]

### III.     CONCLUSION

As set forth above, SubAir failed to conduct a pre-filing investigation to determine whether the accused products include each limitation recited in the asserted claims. Therefore, Defendants respectfully request an Order:

1. finding that SubAir failed to comply with the pre-filing requirements of Rule 11;
2. dismissing this action with prejudice;
3. sanctioning Plaintiff for violation of Rule 11;
4. awarding Defendants their attorneys fees and costs incurred in this action; and
5. awarding such other and further relief as the Court may determine is just and proper.

                                        Respectfully submitted,

                                        Attorneys for Defendants

September 6, 2007                       *s/ Steven R. LeBlanc*
                                        Steven R. LeBlanc (Fed. ID #7000)

---

[55] Exhibit 3, October 19, 2006 letter from Cort Flint to Howard Greenwald.
[56] *View Engineering*, 208 F. 3d at 985.

13

                                    Rodney K. E. Mintz (Fed. ID #9787)
                                    DORITY & MANNING, P.A.
                                    P.O. Box 1449
                                    Greenville, S.C. 29602-1449
                                    Tel: 864-271-1592
                                    Fax: 864-233-7342

**Certificate of Service**

I hereby certify that on September 6, 2007, I electronically filed **DEFENDANT'S MEMORANDUM IN SUPPORT OF RULE 11 MOTION** with the Clerk of the Court using the CM/ECF system which will automatically send e-mail notification of such filing to the following attorney of record:

> **Cort Flint**
> McNair Law Firm, P.A.
> P.O. Box 10827
> Greenville, SC 29603-0827
> 864-232-4261
> 864-232-4437 (fax)
> cflint@mcnair.net

DATE: September 6, 2007                    *s/ Steven R. LeBlanc*
                                           Steven R. LeBlanc (Fed. ID #7000)
                                           DORITY & MANNING, P.A.
                                           P.O. Box 1449
                                           Greenville, S.C. 29602-1449
                                           Tel: 864-271-1592
                                           Fax: 864-233-7342
                                           srl@dority-manning.com

15